In re Edith BLOOM, M.D., Debtor.

Edith BLOOM, M.D., Appellant,

v.

Gilbert ROBINSON, Chapter 7 Trustee, Appellee.

Gilbert ROBINSON, Chapter 7 Trustee, Cross-Appellant,

v.

Edith BLOOM, M.D., Cross-Appellee.

BAP Nos. CC 86–1352 MoMeV, CC 86–1392 MoMeV.

Bankruptcy No. LA 85–12463–CA.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted Sept. 24, 1986.

Decided Dec. 2, 1986.

---

Richard M. Moneymaker, Moneymaker & Kelley, Los Angeles, Cal., for appellant.

Douglas D. Kappler, Robinson, Wolas & Diamant, Los Angeles, Cal., for appellee.

Before MOOREMAN, MEYERS and VOLINN, Bankruptcy Judges.

## OPINION

MOOREMAN, Bankruptcy Judge:

This appeal and cross-appeal arise from an order of the bankruptcy court which overruled an objection to the debtor's exemption of personal earnings and sustained an objection to the debtor's attempt to exempt a pension and profit sharing plan. We AFFIRM.

## ISSUES PRESENTED

1. Are the debtor's pension and profit sharing plans exempt under California Civil Code of Procedure·Section 704.115?

2. Do earnings of a debtor, which have been levied upon by a judgment creditor more than thirty days before the filing of a bankruptcy petition, retain their exempt status as to the debtor's trustee in bankruptcy?

## FACTS

The debtor in the instant appeal, Edith Bloom, is a physician who filed a voluntary petition on September 4, 1985. She was engaged in the practice of medicine, specializing in obstetrics and gynecology, and was a fifty percent owner of "Tobie N. Chroman, M.D. and Edith Bloom, M.D., a Medical Corporation." In 1977, this corporation established a pension plan as well as a profit sharing plan, with Bloom and Chroman acting as the trustees.

Pursuant to the various contributions made to the plans, the value of her interest in the plans was calculated to be $475,-000.00. However, Bloom had borrowed and owed the plans approximately $297,-655.00 as of the filing of the petition, resulting in a reduction in the net worth of her value in the plans. The debtor obtained the various loans from the plans during the period of November 1978 through May 1982. The debtor used these loans to invest in several real estate ventures, in an attempt to obtain a higher return on her money.

In borrowing the money from the plans, Bloom was never denied a request for such funds[1] and provided only unsecured promissory notes to the plans for each loan amount. No payments on the principal were made at any time by the debtor. Interest payments were made annually, from the date of the loans until approximately two weeks prior to the bankruptcy petition, when the debtor made an interest payment

---

1. The plans only required the approval of the loan committee for such loan requests. The    committee consisted of Bloom and Chroman, the other member of the medical corporation.

to the pension plan in the amount of $35,-005.00.

## CONTENTIONS

The debtor now seeks to hold these accounts as exempt retirement funds pursuant to California Code of Civil Procedure Section 704.115. The Trustee challenges this contention, claiming that the debtor's activities regarding the plans places them outside the protection of that exemption.

In addition, on July 31, 1985, the debtor's bank account, containing some of her previous earnings, was levied upon by a judgment creditor. There is no dispute that these funds were earned within thirty days prior to the levy and that pursuant to CCP Section 704.070(b)(2), 75% of those funds are exempt from the levy of the judgment creditor. The dispute presented herein arises from the fact that the bankruptcy petition was not filed within thirty (30) days of the levy. The Trustee argues that the exemption provided in Section 704.-070(b) only extends for thirty days past the date of the payment of the wages. From this contention, the Trustee argues that the fund is not exempt as to the bankruptcy estate and must be turned over pursuant to 11 U.S.C. Section 542.

## STANDARD OF REVIEW

In reviewing the claims presented herein, conclusions of law may be reviewed *de novo* while findings of fact cannot be set aside unless clearly erroneous. *See In re Commercial Western Finance Corp.,* 761 F.2d 1329, 13 B.C.D. 352 (9th Cir.1985). However, when

the question requires ... [the appellate court] to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo.

*Begay v. United States,* 768 F.2d 1059, 1062 (9th Cir.1985) (quoting from *United States v. McConney,* 728 F.2d 1195, 1202

(9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)).

Resolution of the issues presented herein involve, in part, the interpretation and application of *In re Daniel,* 771 F.2d 1352 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986), in light of the exemptions provided in CCP Section 704.115.

## DISCUSSION

*Pension and Profit Sharing Plans*

■ The provision in question herein, CCP Section 704.115, provides, in part, as follows:

Private retirement plans; exemption; periodic payments

(a) As used in this section, "private retirement plan" means:

(1) Private retirement plans, including, but not limited to, union retirement plans.

(2) Profit-sharing plans designed and used for retirement purposes.

(3) Self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1954 as amended, to the extent the amounts held in the plans, annuities, or accounts do not exceed the maximum amounts exempt from federal income taxation under that code.

(b) All amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt.

This exemption may be chosen as part of the exemptions available under state and federal non-bankruptcy law, as opposed to those exemptions set forth in the Bankruptcy Code. *See* 11 U.S.C. Section 522(b). The question presented herein concerns the debtor's attempt to rely upon CCP Section 704.115, rather than upon the Code exemptions.

The Ninth Circuit has had the opportunity to address the application of a portion of

this statutory exemption. In the case of *In re Daniel*, 771 F.2d 1352 (9th Cir.1985), the Court denied an exemption of a profit-sharing fund, holding that it was not "used for retirement purposes" as required by Section 704.115(a)(2). The Court based its finding upon the fact that the debtor made an unsecured loan to himself from the plan to purchase a personal residence and that he made a large contribution to the fund on the eve of bankruptcy which was not consistent with the plan's guidelines. *See id.*, at 1357.

The holding in *Daniel* is applicable to the facts presented herein. Bloom, through her corporation, created a profit sharing fund. She made numerous unsecured loans to herself from the plan, investing in speculative real estate ventures. Although all of her loans were approved by the plan, such approval came only from herself and her partner, Chroman, and Bloom's requests were never denied. Further, any benefit which would have been derived from such investments would not have accrued to the benefit of the plan, but to Bloom individually. The debtor has failed to provide any credible evidence to the contrary. It is undisputed that all of the investments were made in her name, without mention of the plan.

In addition, Bloom made a payment to the plans of $35,005.00 just two weeks before the filing of her Chapter 7 petition. Although this amount reflects the amount of interest accrued upon the outstanding liabilities, the timing of this large payment is not supported by the various dates of the notes signed by the debtor. Just as in *Daniel, supra*, these facts support the bankruptcy court's determination that the profit sharing plan was not "used for retirement purposes" as required by CCP Section 704.115(a)(2), thereby precluding use of this exemption by the debtor.

At oral argument, counsel argued that a holding that the funds are non-exempt will result in a large tax liability to the bankruptcy estate. This contention is unpersuasive for two reasons. First, the debtor had the opportunity for substantial tax benefits arising from the annual interest-only payments to the plan. After obtaining these tax benefits for almost seven years, the debtor cannot now be heard to complain of a potential tax liability arising from the plans.

Second, CCP Section 704.115(a)(2) requires that the plan be "designed *and used* for retirement purposes." In making a determination whether the plan complies with the statute, the court must consider the history of the plan and the actions of the debtor regarding the plan. *See In re Daniel, supra*. It should focus on the duration of the plan, rather than the result upon the bankruptcy estate of a finding that the plan is exempt or non-exempt. Although the result of the determination upon the estate may be a factor to consider, it is not controlling on the record in this matter.

The debtor also contends that even if the profit sharing plan is not exempt, the pension plan is not subject to challenge. She argues that 704.115(a)(1) does not contain the limitation "designed and used for retirement purposes," thereby allowing an unlimited exemption to all retirement funds. Such a contention is without merit. It cannot be seriously argued that a retirement plan, as defined in (a)(1) need not be "designed and used for retirement purposes." Any other interpretation would allow all funds and accounts to fall within this exemption by simply labeling it as a retirement plan.

The need for the limiting language in (a)(2) is apparent due to the existence of profit sharing plans which do not serve only as retirement plans. It is clear that the legislature sought to exempt only plans which are "designed and used for retirement purposes," regardless of whether they are in the form of "retirement plans" or profit sharing plans. Accordingly, the analysis of the pension plan is similar to that of a profit sharing plan pursuant to CCP Section 704.115, as both must be "designed and used for retirement purposes." As the facts in the present case involve both plans, the above holding that the debt-

or is not entitled to an exemption applies here as well. Therefore, the order of the bankruptcy court sustaining the objection of the Trustee to these exemptions is affirmed.

*Personal Earnings*

■ As mentioned above, the debtor had $11,000.00 in an account which was subject to a levy by a judgment creditor. The Trustee now seeks to obtain the remainder of those funds pursuant to 11 U.S.C. Section 544(a), claiming that they are no longer exempt. Pursuant to CCP Section 704.-070(b)(2):

> Seventy-five percent of the paid earnings that are levied upon or otherwise sought to be subjected to the enforcement of a money judgment are exempt if prior to payment to the employee they were not subject to an earnings withholding order or a wage assignment for support.

There is no dispute that seventy-five percent of the $11,000.00 was exempt at the time of the levy, pursuant to the above statute, leaving a remainder of $8,250.00. The bankruptcy court found these remaining funds to be exempt as against the Trustee. By its cross-appeal, the Trustee challenges this ruling, claiming that the exemption in Section 704.070(b)(2) extends only for thirty days, pursuant to CCP Section 704.070(a)(2).

Having reviewed the statute in question and the record in this matter, this Court holds that the debtor in this case is entitled to an exemption for the remainder of the fund, in the amount of $8,250.00.

As set forth in CCP Section 704.070(a)(2), "paid earnings" are "earnings as defined in Section 706.011 that were paid to the employee during the 30–day period ending on the date of the levy." Further, in the comment to this statute it provides that "[s]ubdivision (b)(1) continues the protection of wages that have already been garnished or subjected to a wage assignment for support for 30 days after they are paid." Implicit in this statement is the fact that the protection will *not* continue after the 30 days has passed.

At the time of the levy, the account contained "paid earnings" acquired during the thirty days prior to the date of levy, subject to an exemption of seventy-five percent. *See* CCP Section 704.070(b)(2). However, it would appear that the statute would allow claims on any funds which were exempt on the date of the levy but later fell outside the thirty day period. In this case, the entire amount remaining in the account was obtained more than thirty days prior to the filing of the bankruptcy petition on September 4, 1985, as the date of levy was July 31, 1985.

Notwithstanding the above, the debtor had no access to the funds in the account. Pursuant to relevant statute, should the debtor oppose the levy with a claim of exemption, it must be determined by specific guidelines set forth for this procedure. In the present case, the debtor claimed such an exemption. However, during the time period required to determine the exemption, which in this case was stayed by the filing of the petition, the debtor had no access to, or benefit of, the funds in the account. As the debtor has no access to such funds, it is inequitable to allow a subsequent levy, by the same or another creditor, on the remaining funds.

The legislature made clear by its comments that it intends to maintain an exemption on wages for a limited time, i.e. thirty days. Any funds which are retained by the debtor after this time period should be subject to claims of creditors, consistent with the provisions of bankruptcy legislation. However, pursuant to this exemption, the debtor may retain a portion of his "paid earnings" each month in order that the debtor may meet his monthly obligations. By allowing a creditor to tie up an account of "paid earnings" in such a manner and thereby subject it to repetitive claims is clearly inconsistent with the purposes of the statute, as well as the provisions of the Bankruptcy Code.

Therefore, the bankruptcy court properly concluded that the funds in the account in question are subject to a personal earnings exemption.

**460**

Accordingly, the order of the bankruptcy court is AFFIRMED.